406 A.2d 1087

**COMMONWEALTH of Pennsylvania**

v.

**James Harold DAVIS, Appellant.**

Superior Court of Pennsylvania.

Submitted March 31, 1978.

Decided June 29, 1979.

Robert E. Kerper, Jr., Assistant Public Defender, Reading, for appellant.

J. Michael Morrissey, District Attorney, Reading, for Commonwealth, appellee.

Before JACOBS, President Judge, and HOFFMAN, CERCONE, PRICE, SPAETH and HESTER, JJ.

CERCONE, President Judge:

A jury convicted appellant, James Harold Davis, of aggravated assault and simple assault on the person of Gloria Amos. The bizarre facts are as follows. While visiting at his mother's house on May 20, 1976, appellant struck his girlfriend, Linda Putt, in the face without any apparent provocation. Ms. Putt fled from the house bleeding profusely from the face with the appellant in hot pursuit. In his zeal to catch his girlfriend, appellant "dove through the air" and landed on an automobile smashing its windshield and breaking off its radio antenna. When Ms. Putt entered another automobile for protection, appellant leaped onto the hood and smashed its windshield with his bare fist. Abandoning the car, Ms. Putt raced to a nearby bus, but the bus driver ignored her desperate pounding and refused to open the doors to allow her to board. Appellant caught the girl and began beating her. One brave individual, Charles Amos, pushed appellant aside and instructed Ms. Putt to run to his car for safety. Mr. Amos' wife, Gloria, guided the battered woman into the front seat of the automobile.

Before they could secure the car, appellant intervened and raised his clenched fist at the car window whereupon Gloria Amos blurted, "Don't break our window too." In one motion, appellant swiveled and punched Mrs. Amos in the face causing her to black out. Police officers arrived and quickly subdued appellant. Mrs. Amos suffered multiple fractures of her lower jaw which forced her to spend four days in the hospital and six weeks with her jaws wired shut.

Appellant raises seven separate grounds to attack his conviction. We considered each argument seriatim and found none persuasive. Accordingly, we affirm the conviction.

■ Appellant first contests the sufficiency of the evidence to sustain the jury verdict convicting him of aggravated assault. A person is guilty of aggravated assault if he: "(1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life . . . ." Crimes Code, 18 Pa.C.S. § 2702(a)(1) (1973). "Serious bodily injury" is defined as: "[B]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." Crimes Code, 18 Pa.C.S. § 2301 (1973). Viewing the evidence and all reasonable inferences in a light most favorable to the Commonwealth, *Commonwealth v. McFadden*, 448 Pa. 146, 292 A.2d 358 (1972), we conclude that a jury could find beyond a reasonable doubt that serious bodily injury occurred, and that appellant either intended that result or acted recklessly so as to manifest an extreme indifference to the value of human life.

The instant case is readily distinguishable from *Commonwealth v. Alexander*, 477 Pa. 190, 383 A.2d 887 (1978), wherein the Supreme Court reversed our court[1] and held that a single blow to the face of the victim resulting only in a fractured nose was not sufficient to constitute aggravated

1. 237 Pa.Super. 111, 346 A.2d 319 (1975).

assault. Importantly, in *Alexander* the Commonwealth conceded that a simple fracture of the nose was not a "serious bodily injury" as defined in Section 2301 of the Crimes Code. Instead, the Commonwealth argued that a jury could infer extreme indifference to the value of human life under Section 2702(a)(1) merely from a punch delivered to the victim's face. The limited holding in *Alexander* was the basis for our upholding the conviction for aggravated assault in *Commonwealth v. Kibe*, 258 Pa.Super. 353, 392 A.2d 831 (1978), where the blow which fractured the victim's nose was accompanied by conduct evidencing appellant's intention to abduct and molest the victim.

In the instant case, the force of appellant's blow to Mrs. Amos' face caused her to black-out and to sustain multiple fractures of the jaw. She was hospitalized for four days and suffered six weeks with her jaw wired closed. Clearly, this was a serious bodily injury within the intendment of Section 2301 of the Crimes Code, involving as it did "protracted loss or impairment of the function of [a] bodily member or organ." Additionally, appellant's overall conduct, including his frenzied pursuit of Ms. Putt in order to beat her more seriously, supports the conclusion that appellant acted with extreme disregard of the value of human life as required by Section 2702(a)(1) of the Crimes Code. See *Commonwealth v. Bullock*, 259 Pa.Super. 467, 393 A.2d 921 (1978). Hence, the evidence was more than sufficient to support the jury's verdict of guilty for aggravated assault.

■■■ After the jury was sworn, appellant complained that he was being denied a fair trial because of the absence of blacks upon the jury panel. The objection was not timely. Pa.R.Crim.P. 1104(b) states: "Unless opportunity did not exist prior thereto, a challenge to the array shall be made not later than five days before the first day of the week the case is listed for trial of criminal cases for which the jurors have been summoned and not thereafter, and shall be in writing, specifying the facts constituting the ground for the challenge." In this case, appellant waived any objection by failing to timely object. Furthermore, even without this procedural flaw, appellant has failed to show that the panel

from which his jury was selected did not represent a cross-section of the community. *Commonwealth v. Jones*, 465 Pa. 473, 350 A.2d 862 (1976). In the connected case, prior to remand, the court stated in that case, "[T]he defendant has the initial burden of demonstrating a prima facie case of discrimination, then the burden shifts to the Commonwealth to rebut the evidence . . .." *Commonwealth v. Jones*, 452 Pa. 299, at 312, 304 A.2d 684 at 692. Appellant has made no attempt to show racial prejudice in the composition of the jury panel or any systematic exclusion of blacks from this panel. We dismiss appellant's contention.

At trial, appellant requested additional peremptory challenges beyond the eight challenges fixed by statute. He now appeals the denial of that request. There is no constitutional status to a peremptory challenge. *Commonwealth v. Kubacki*, 208 Pa.Super. 523, 224 A.2d 80 (1964); *Commonwealth v. Cohen*, 203 Pa.Super. 34, 199 A.2d 139 (1964). The right to the peremptory challenges originated in the legislature and is subject to its discretion, *Commonwealth v. Cohen*, 203 Pa.Super. 34, 199 A.2d 139 (1964), and the trial court is without power to enlarge the number of challenges. *Commonwealth v. Segers*, 460 Pa. 149, 331 A.2d 462 (1975). The legislature has stated: "the defendant shall . . . be entitled to peremptory challenges as follows . . . in the trial of felonies, other than those triable exclusively in the courts of oyer and terminer and general jail delivery, and in the trial of persons charged with perjury and forgery, the commonwealth and the defendant shall each be entitled to eight peremptory challenges . . .." Act of March 6, 1901, P.L. 16, § 1: 1901, July 9, P.L. 629, § 1, 19 P.S. § 811 (1964).[2] Aggravated assault is not a felony triable exclusively in oyer and terminer and general jail delivery under 17 P.S. § 391 (1962). Appellant received eight peremptory

2. The legislature repealed this section by The Act of October 7, 1976, P.L. 1089, No. 217, § 2, effective January 7, 1977, 19 P.S. § 811 (Supp.1978), which would have limited the defendant to seven peremptory challenges. The trial took place on November 11, 1976 before the effective date of the new act. Accordingly, the trial court properly allowed appellant eight peremptory challenges under the prior act.

challenges, the proper number to which he was statutorily entitled. Accordingly, appellant's argument is without merit.

Appellant contends that the court committed reversible error in denying appellant's request at trial for a continuance in order to produce witnesses favorable to the defense. Appellant recognizes that it is within the discretion of the trial court to grant a request for a continuance made at trial. *Commonwealth v. Smith*, 442 Pa. 265, 275 A.2d 98 (1971); *Commonwealth v. Fisher*, 247 Pa.Super. 187, 372 A.2d 1 (1977); Pa.R.Crim.P. 301, but argues that the request should have been granted in the interest of justice because the defense presented no other witnesses. The trial court responded to this contention by stating: "It is not an abuse of discretion to deny a request for a continuance in the middle of trial, after the Commonwealth rested its case, after a demurrer had been denied, when the witnesses sought to be called do not appear to be material, and when no explanation was given for the tardiness of the request. See, *Commonwealth v. Clark*, 238 Pa.Super. 519, 523, [361 A.2d 779] (1976); *Commonwealth v. Riddick*, 232 Pa.Super. 333, 335, [334 A.2d 705] (1975)." We completely agree with the lower court's reasoning and conclusion and dismiss appellant's contention.

Next, appellant asserts error in the trial court's permitting the Commonwealth to call a witness for its case-in-chief not listed on the criminal information. Appellant pleads surprise. Without considering the merits of appellant's argument, we conclude that the issue is not properly before us because it is not contained within appellant's post-trial motions. Pa.R.Crim.P. 1123(a); *Commonwealth v. Bundy*, 471 Pa. 220, 369 A.2d 1276 (1977); *Commonwealth v. Olsen*, 247 Pa.Super. 513, 372 A.2d 1207 (1977).

Appellant also claims error in the trial court's refusal to allow lay witnesses to state their opinion of appellant's sanity at the time of the alleged incident. On cross-examination, defense counsel asked Ms. Putt, appellant's girlfriend, and Robert Kostival, a bystander, whether or not in their opinion appellant appeared sane. Initially, the court

permitted Ms. Putt to respond. When the same question was put to Mr. Kostival, the court reconsidered its earlier position, sustained the Commonwealth's objection and excluded Ms. Putt's response from the record. Appellant claims reversible error. We disagree.

"Insanity" has a special meaning as a defense to a criminal prosecution. What medical science regards as mental illness does not necessarily amount to legal insanity. The legal standard is found in the M'Naghten test under which a person is insane if at the time of committing the act he is, as the result of mental disease or defect, unable to understand the nature and quality of his act or to distinguish between right and wrong with respect to that act. *Commonwealth v. Bruno*, 466 Pa. 245, 352 A.2d 40 (1976); *Commonwealth v. Vogel*, 468 Pa. 438, 364 A.2d 274 (1976). The law restricts the admissible evidence on insanity as a layman may not express an opinion about mental capacity in relation to the ultimate determination to be made by the jury. *Commonwealth v. Knight*, 469 Pa. 57, 364 A.2d 902 (1976). In *Knight*, the Supreme Court explained the rationale that "a layman may not render an opinion as to defendant's ability to know the nature and consequences of his acts because such an opinion is no more than an inference which the jury, composed of laypersons, is as equally capable of making." *Id.*, 469 Pa. at 71, 364 A.2d at 909. In this case, defense counsel's question calls for a conclusion of the witness as to the sanity of appellant which is an ultimate determination to be made by the jury. We recognize that lay testimony as to a person's mental capacity is admissible in certain limited situations as a condensed version of the witness's total observations. *Commonwealth v. Knight*, 469 Pa. 57, 364 A.2d 902 (1976); *Commonwealth v. Zlatovich*, 440 Pa. 388, 269 A.2d 469 (1970). Our cases, though, have refused to allow a lay person to state an opinion as to the ultimate issue. *Commonwealth v. Wilson*, 444 Pa. 117, 121, 281 A.2d 864 (1971); *Commonwealth v. Knight*, supra. The question called for a lay opinion on an ultimate issue and we find no abuse of discretion in excluding it. *Commonwealth v. Knight*, infra.

■ Appellant finally contends that the court erred in refusing his requested charge to the jury on insanity. However, as the Supreme Court of this Commonwealth held in *Commonwealth v. Demmitt*, 456 Pa. 475, 483, 321 A.2d 627 (1974): "There must be evidence in the case from whatever source that he did not know the nature and quality of his act or that he did not know that it was wrong." Upon reviewing the testimony, we find the evidence insufficient to raise the issue of insanity and to require a charge to the jury. Cf. *Commonwealth v. Brown*, 462 Pa. 578, 342 A.2d 84 (1975); *Commonwealth v. Harper*, 479 Pa. 42, 387 A.2d 824 (1978); *Commonwealth v. Hughes*, 480 Pa. 311, 389 A.2d 1081 (1978).

For the foregoing reasons the judgments of sentence are affirmed.

SPAETH, J., concurs in the result.

JACOBS, former President Judge, did not participate in the consideration or decision of this case.