463 A.2d 1190

**COMMONWEALTH of Pennsylvania**

v.

**Vincent COURTS, Appellant.**

Superior Court of Pennsylvania.

Submitted March 24, 1983.

Filed Aug. 5, 1983.

Petition for Allowance of Appeal Denied Nov. 4, 1983.

See also, 468 Pa. 613, 364 A.2d 684.

John Francis Lyons, Harrisburg, for appellant.

William A. Behe, Deputy District Attorney, Harrisburg, for Commonwealth, appellee.

Before CERCONE, P.J., and CIRILLO and HOFFMAN, JJ.

CIRILLO, Judge:

Presently before this Court is an appeal from an Order of the Court of Common Pleas of Dauphin County, dated February 9, 1982, denying appellant's post-trial motions filed *nunc pro tunc.*

On June 12, 1975, appellant was brought before the Court of Common Pleas of Dauphin County and sentenced on two prior convictions.[1] Following the imposition of sentence, while the appellant was being transported from the courtroom back to the court house detention area, the appellant attempted to flee from official custody. The deputy sheriffs escorting appellant ordered him to halt, but appellant continued to run down the stairwell and outside the court house. After firing a warning shot, a deputy sheriff shot the appellant. His wound notwithstanding, the appellant fought police efforts to subdue him but was finally taken into custody and brought to a hospital.

Based on these facts, on August 5, 1975, the appellant was indicted by the Dauphin County Grand Jury on a charge of escape,[2] and on October 30, 1975, the appellant was convicted by a jury of this charge. No post-trial

---

1. Appellant was convicted of attempted murder and first degree murder. *See Commonwealth v. Courts,* 468 Pa. 613, 364 A.2d 684 (1976) for a complete discussion of the relevant facts of this case.

2. Act of December 6, 1972, P.L. 1482, No. 334, § 1; 18 C.P.S.A. § 5121.

motions were filed. On November 26, 1975, the appellant was sentenced to a term of imprisonment of not less than three and one-half nor more than seven years. No direct appeal was taken following sentencing.

On or about February 2, 1981, appellant filed a petition for relief under the Post Conviction Hearing Act.[3] The PCHA Court appointed new counsel, and on April 21, 1981, the appellant filed a supplemental petition for relief under the Act alleging *inter alia* that his trial counsel was ineffective for having failed to file post-trial motions. Pursuant to this allegation, on October 16, 1981, the PCHA Court ordered that the appellant be granted the right to file post-trial motions *nunc pro tunc* and on October 28, 1981, appointed new counsel to represent the appellant in this matter. These motions were filed and subsequently denied on February 9, 1982. It is from the denial of these post-trial motions that the present appeal is taken.

Appellant raises several issues regarding the use of a rubber-stamp facsimile signature of the district attorney on the indictment which charged him with escape. First, the appellant contends that the application of a rubber-stamp facsimile signature rendered the indictment null and void. We find this contention to be without merit.

Pa.R.Crim.P. Rule 213(a) provides that "[a]n indictment shall be signed by the attorney for the Commonwealth...."[4] Whether a rubber-stamp facsimile constitutes a "signature" under Rule 213(a) has not been specifically addressed by the courts of this Commonwealth. Appellant strongly urges this Court to apply to indictments the rule which requires a manual signature of the district attorney to be placed on bills of information.[5] However, the

---

3. Act of January 25, 1966, P.L. (1965) 1580, § 1, 19 P.S. §§ 1180-1 *et seq.*

4. 42 Pa.C.S.A.

5. *See Commonwealth v. Belcher,* 258 Pa.Super. 153, 392 A.2d 730 (1981); *Commonwealth v. Emanuel,* 285 Pa.Super. 594, 428 A.2d 204 (1981); *Commonwealth v. Veneri,* 306 Pa.Super. 396, 452 A.2d 784 (1982).

appellant fails to distinguish the inherent difference between an indictment and an information.

The policy behind the requirement of a manual signature on an information is well established. Recently, in *Commonwealth v. Veneri*, 306 Pa.Super. 396, 452 A.2d 784 (1982), this Court, sitting *en banc*, stated its reasons for this requirement.

Under Pa.R.Crim.P. 225(a) the attorney for the Commonwealth has the discretionary power to either proceed with charges by information or move to nolle prosequi the charges. The district attorney or his designee is also mandated to inquire into and make full examination of all the facts and circumstances connected with each case to determine if the filing of an information is warranted 42 Pa.C.S.A. § 8931(d). Thus the act of approving the information is one fraught with grave consequences not the least of which may be the career, reputation and very freedom of the defendant. It would demean the significance of this fateful document if we were to interpret the words "shall be signed" to permit affixing a rubber stamp facsimile to the information. We would thus reduce the required attestation to a mere clerical mechanism no different or more deliberative, for example, than assigning the information a file number for office convenience. It would be simpler and just as meaningful to have the name of the attorney for the Commonwealth preprinted on the information form. It is, therefore, our belief that *only a written indication by the district attorney or his designee, that the charges contained in an information have been considered and approved satisfy the "signature" requirement of Pa.R.Crim.P. 225(b).* While the prosecution may find the personal signature requirement of Pa.R.Crim.P. 225(b) to be burdensome, any inconvenience is far outweighed by the need for a deterrent against frivolous charging of an accused.

306 Pa.Super. at 402–03, 452 A.2d at 787. (Emphasis added).

The final presentment of a bill of indictment by a grand jury is the culmination of a strictly mandated procedural process.[6] At least fifteen jurors must review the charges in the bill of indictment presented to them by the district attorney.[7] Each juror as well as the foreman must be administered an oath prior to consideration of the indictment.[8] Each witness heard by the grand jury must be sworn in and his name placed on the bill of indictment.[9] The bill of indictment may be approved only "if it receives the affirmative vote of at least twelve grand jurors." [10] The foreman of the grand jury is directed to personally sign the bill.[11] If, after due consideration by the requisite number of jurors, the bill is dismissed, the Court is directed to either dismiss the defendant or reduce his bail if proper under the circumstances.[12]

In recognition of the many safeguards inherent in the grand jury process, not present in the process of filing a bill of information, our Court has stated,

A bill of indictment presented by a grand jury has indicia of reliability not found in a bill of information. The grand jury has made an independent determination of the sufficiency of the evidence which need merely be ratified by the district attorney. In the case of a bill of information, however, it is the prosecutor alone who must decide whether to bring the defendant to trial. When the vehicle for initiating a criminal trial (i.e., the information) is unsigned, it is not at all apparent that a reasoned evaluation of the advisability of instituting a criminal trial

**6.** *See generally* Pa.R.Crim.P., Rules 200–211, 42 Pa.C.S.A.

**7.** *Id.;* Rule 201(a). This rule provides,
(a) The grand jury shall consist of not less than fifteen nor more than twenty-three legally qualified persons.

**8.** *Id.;* Rule 206.

**9.** *Id.;* Rule 207.

**10.** *Id.;* Rule 210(b).

**11.** *Id.;* Rule 210(a).

**12.** *Id.;* Rule 210(d).

has been made. The signature on the information is, therefore, a vital ingredient which guarantees the authenticity and reliability of the document.

*Commonwealth v. Belcher*, 258 Pa.Super. 153, 155–156, 392 A.2d 730, 731 (1978), *rev'd on other grounds, Commonwealth v. Veneri*, 306 Pa.Super. 396, 452 A.2d 784 (1982).

In line with this reasoning, the grand jury, when faced with a bill of indictment, decides whether to bring the defendant to trial. The signature of the foreman, not the district attorney, is the necessary indication that "a reasoned evaluation of the advisability of instituting a criminal trial has been made." *Commonwealth v. Belcher, supra*, 258 Pa.Super. at 156–157, 392 A.2d at 731. It is therefore the signature of the foreman not the district attorney, which guarantees the reliability and authenticity of the bill of indictment and acts as a deterrent against the frivolous charging of an accused. The foreman's signature appears on the bill of indictment charging the appellant in the instant case.

■ We therefore hold that a rubber-stamp facsimile signature of the district attorney on a bill of indictment is adequate to fulfill its purpose of ratifying the determination of the grand jury and thereby constitutes a proper signing for the purpose of Rule 213(a). The need for a manual signature by the district attorney is far less in the case of a bill of indictment than in the case of a bill of information, as the duties of the district attorney in reviewing a bill of information are superceded by the grand jury's finding of probable cause, in passing on a bill of indictment. The rubber-stamp facsimile of the district attorney's signature on the indictment charging the appellant in the instant case does not render such indictment null and void and the present charge may not be dismissed on this ground.

■ We find appellant's second contention, that the failure of appellant's trial attorney to object to the use of the rubber-stamp facsimile signature on appellant's indictment constituted ineffective assistance of counsel, to be

without merit. It is a well established principle in this Commonwealth that counsel will not be deemed to have been ineffective for failing to assert a baseless or frivolous claim. *Commonwealth v. Davis,* 279 Pa.Super. 218, 420 A.2d 1111 (1980); *Commonwealth v. Rainey,* 282 Pa.Super. 15, 422 A.2d 652 (1980). It is only when the claim which has been forgone was of arguable merit that inquiry must be made into the basis for counsel's decision not to pursue the matter. *Commonwealth v. Weathers El,* 485 Pa. 28, 400 A.2d 1295 (1979); *Commonwealth v. Davis, supra.*

Our holding herein that a rubber-stamp facsimile signature of the district attorney does not render a bill of indictment invalid, negates any basis upon which such claim could have been predicated. Further inquiry into the attorney's reasons for failing to assert this claim need not be undertaken and appellant's trial counsel cannot be deemed ineffective for failing to raise it.[13]

Appellant's third contention is that the trial court's charge to the jury was impermissably prejudicial and suggestive of the appellant's guilt thereby denying the appellant a fair trial. More specifically, appellant draws attention to one comment by the Court: "It is a simple case and I have no question whatsoever that you will be able to arrive at an appropriate decision unanimously."

A court's charge to the jury must be reviewed in light of the mandate that,

> The jury depends on the trial court for guidance and it will give great weight to any expressions of the court's personal opinion. To preserve a defendant's right to a fair trial, the trial court must be careful to remain abso-

13. Appellant also contends that the decision in *Commonwealth v. Emanuel, supra,* that a rubber-stamp facsimile signature on a bill of information does not satisfy the signature requirement of Pa.R. Crim.P. 225(b), be applied retroactively to the instant case which was decided some six years before *Emanuel.* In light of our holding that a rubber-stamp facsimile signature constitutes a proper signing under Pa.R.Crim.P. 213(a), we do not find it necessary to herein address this issue.

lutely impartial, and not to invade the province of the jury.

*Commonwealth v. Whitfield*, 474 Pa. 27, 34–35, 376 A.2d 617, 621 (1977). (Citations omitted).

With this standard in mind, we have reviewed the trial court's charge in its entirety and have found the appellant's allegation to be without merit. Since only three witnesses took the stand, with testimony concluding within a two-hour span, the Court's comment regarding the simplicity of the case was indeed accurate. The contention that the appellant was prejudiced by the Court's mention of arriving at an appropriate decision unanimously requires the taking of this statement completely out of context. The transcript clearly shows that the statement in question follows a lengthy dissertation regarding the necessity of a unanimous criminal verdict and was only added to emphasize this point.

■ We conclude, therefore, that when viewed in its entirety, the Court's charge was a clear attempt to explain and emphasize to the jury that they were the finders of fact and the sole determiners of the appellant's guilt or innocence. Nowhere in the charge does the Judge attempt to invade the province of the jury by stating his own opinion or by suggesting the proper decision. To afford the appellant a new trial predicated on this contention would be an affront to the trial judge and to the jurors in this case.

The final contentions raised by the appellant are focused upon the conduct of his trial counsel during the process of jury selection. Appellant contends, in particular, that his trial counsel was ineffective for failing to conduct voir dire examination, concentrating on the lack of inquiry into possible racial prejudice or bias of prospective jurors, and for failing to exercise peremptory challenges.

■ The test for ascertaining whether a defendant has been denied effective assistance of counsel is well established. "... [C]ounsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had *some reasonable basis* designed to effectuate his client's interests." *Common-*

*wealth ex rel. Washington v. Maroney*, 427 Pa. 599, 604, 235 A.2d 349, 352 (1967). Moreover, in order to be entitled to relief under a theory of ineffective assistance of counsel, it must appear that counsel's action or inaction was prejudicial to the defendant. *See Commonwealth v. Hubbard*, 472 Pa. 259, 372 A.2d 687 (1977); *Commonwealth v. Gordon*, 254 Pa.Super. 267, 385 A.2d 1013 (1978).

■ As to the appellant's claim that his trial counsel was ineffective for failing to exercise any peremptory challenges, our Court has held that "[t]he mere fact that no jurors were challenged without more cannot be determinative of one's efficacy as trial counsel." *Commonwealth v. Kittrell*, 285 Pa.Super. 464, 469, 427 A.2d 1380, 1382 (1981). Counsel cannot be deemed ineffective for not exercising these challenges just for the sake of exercising them.

The other two issues raised by the appellant concern voir dire examination. Contrary to appellant's assertion, a review of the record reveals that counsel did engage in voir dire examination of prospective jurors. While the examination was brief and did not delve into the area of racial prejudice or bias, voir dire did occur.

Appellant cites *Commonwealth v. Christian*, 480 Pa. 131, 389 A.2d 545 (1978) and *Commonwealth v. Brown*, 464 Pa. 625, 347 A.2d 716 (1975) in support for his contention that voir dire examination into racial prejudice is necessary to avoid a finding of ineffective assistance of counsel. These cases, however, involved racially sensitive issues and are therefore easily distinguished from the instant case. In *Brown*, the defendant had been convicted of the rape of a white minor. *Christian* involved a black defendant who had been convicted of the rape of an elderly white woman. The Pennsylvania Supreme Court found that voir dire inquiry into possible racial prejudice of prospective jurors in these cases was necessary and the absence of such inquiry denied the defendants due process of law. In *Christian*, the Court emphasized that its determination was predicated on the specific facts of the case and stated,

In the present case, it is clear that circumstances were present which would make it necessary to inquire into

racial sensitivity of potential jurors. The crime—the rape and other sexual molestation of an elderly woman—was itself shocking. The fact that the victim was white and the accused a black man cannot be ignored.... The case was thus racially sensitive, and one in which there was need on voir dire for inquiry into the possible racial prejudices of potential jurors.

480 Pa. at 137, 389 A.2d at 547–548. (Footnote omitted).

■ The facts in the instant case do not involve racially sensitive issues. The appellant escaped from the custody of the Dauphin County Sheriff's Department after being sentenced for murder. Frankly, it is difficult to conceive of any reason why counsel would raise the issue of racial prejudice. If we were to uphold appellant's contention here, we, in effect, would be requiring voir dire examination into racial prejudice of prospective jurors in *any* case involving a black defendant. The interests of justice would not be better served by this requirement. Furthermore, the appellant fails to allege that he suffered any specific prejudice because of the lack of questions regarding racial bias. The appellant makes no attempt to show racial prejudice in the composition of the jury panel or any systematic exclusion of blacks from the panel.[14] This is clearly an insufficient basis upon which counsel could be held to be ineffective.

Accordingly, we affirm the Order of the Court below.

**14.** In *Commonwealth v. Davis,* 267 Pa.Super. 370, 406 A.2d 1087 (1979), this Court dismissed appellant's contention that he was denied a fair trial because of the absence of blacks on the jury panel. The Court stated,

[A]ppellant has failed to show that the panel from which his jury was selected did not represent a cross section of the community ... [T]he defendant has the initial burden of demonstrating a prima facie case of discrimination, then the burden shifts to the Commonwealth to rebut the evidence.... Appellant has made no attempt to show racial prejudice in the composition of the jury panel or any systematic exclusion of blacks from this panel.

267 Pa.Super. at 375–76, 406 A.2d at 1089. Appellant in the instant case has clearly not demonstrated a prima facie case of discrimination when viewed in light of this reasoning.