J-S39045-16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| JERMAINE TERRELL MILLER, | : | |
| | : | |
| Appellant | : | No. 2157 MDA 2015 |

Appeal from the Judgment of Sentence September 2, 2015
in the Court of Common Pleas of Franklin County,
Criminal Division, at No(s): CP-28-CR-0000626-2014

BEFORE:    STABILE, PLATT,* and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:            **FILED JULY 08, 2016**

Jermaine Terrell Miller (Appellant) appeals *pro se* from the judgment of sentence entered on September 2, 2015, following his convictions for terroristic threats, simple assault, and disorderly conduct. We affirm.

The charges in this matter stem from an incident that occurred on March 13, 2014, when Appellant, believing that his mother had stolen his identity, made threatening and harassing phone calls to his mother, sister, and brother. In particular, Appellant threatened to kill his mother if she did not confess to his accusations of identity theft. The situation escalated when Appellant arrived at his mother's home later that afternoon. A physical altercation ensued when Appellant's brother attempted to remove Appellant from the property. Once Appellant's brother had Appellant restrained, he instructed Appellant to leave. However, upon being freed, Appellant

*Retired Senior Judges assigned to the Superior Court.

grabbed a kitchen knife and chased his brother out of the house, slashing at him and threatening to kill him. The family called police who arrived and observed Appellant throw the knife across the street. Appellant was subsequently arrested and charged with the aforementioned offenses.

The matter proceeded to a jury trial, at which Appellant chose to represent himself. On August 3, 2015, Appellant was found guilty of all charges. On September 2, 2015, Appellant was sentenced to an aggregate term of 40 to 84 months' incarceration.[1] Appellant timely filed a post-sentence motion, which was denied on October 9, 2015.[2] This timely-filed appeal followed. Both Appellant and the trial court have complied with the mandates of Pa.R.A.P. 1925.

---

[1] The trial court applied the deadly weapon (used) enhancement (DWE), which increased the applicable range of sentences available for each charge. 204 Pa. Code § 303.17(b). Accordingly, at Count 1, terroristic threats, Appellant was sentenced to 22 to 48 months' incarceration. At Count 2, simple assault, Appellant was sentenced to a term of 12 to 24 months' incarceration to run consecutively to that imposed at Count 1. At Count 3, disorderly conduct, Appellant was sentenced to a term of incarceration of 6 to 12 months to run consecutively to Count 2.

[2] Appellant's post sentence motion was received by the trial court two days after the September 14, 2015 filing deadline. The envelope in which the motion was mailed was not date stamped by the post office or the clerk of courts; however, because Appellant was incarcerated at the time his motion was filed, we may assume that Appellant placed his motion in the hands of prison authorities on or before September 14, 2015. Thus we hold that his motion is timely-filed under the prisoner mailbox rule. **See Commonwealth v. Patterson**, 931 A.2d 710 (Pa. Super. 2007) (holding that even without a postmark definitively noting the date of mailing, this Court may find an incarcerated appellant's filing timely where the date of receipt indicates that appellant placed the document in the hands of prison authorities in advance of the applicable filing deadline).

Appellant first argues that the trial court erred in denying his requests for subpoenas, which in turn violated his right of compulsory process under the Sixth Amendment. Appellant's Brief at 6. This issue presents a question of law for which our standard of review is *de novo* and our scope of review is plenary. *See Commonwealth v. Gatlos*, 76 A.3d 44, 63 (Pa. Super. 2013).

> A defendant has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law. [This] constitutional right, though fundamental, is not absolute. In order to compel the attendance of a witness at trial, it must be shown that the information possessed by the witness is material, *i.e.*, capable of affecting the outcome of the trial, and that it is favorable to the defense.

*Commonwealth v. Douris*, 766 A.2d 1276, 1279 (Pa. Super. 2001) (citation and quotation marks omitted).

In his brief, Appellant fails to explain whom he sought to subpoena and what material information those persons possessed. However, in its opinion, the trial court explained that, at multiple times prior to trial, Appellant "requested subpoenas for the FBI, the IRS, and 'expert witnesses for government agencies.'" Trial Court Opinion, 10/9/2015, at 4. The court noted that Appellant alleged no basis as to why these requests were necessary to his defense, failed to identify specifically the individuals he wished to call to testify, and failed to explain what information possessed by the listed government entities was material to his case. *Id.* The court surmised that Appellant wished to litigate his underlying claims of identity

theft, but determined that "any testimony provided on that topic would not be relevant for the purposes of [Appellant's trial]; even if his identity was stolen, it provides no defense or justification to the conduct for which he was arrested and charged." *Id.* at 4-5.

We agree with the trial court's analysis. Appellant has failed to convince us that the court denied him the right to call witnesses who held information material to the assault and harassment charges that was capable of affecting the outcome of his trial. *Douris*, 766 A.2d at 1279. Thus, we hold that Appellant is not entitled to relief on this issue.

Appellant also makes a claim that the absence at trial of arresting officer Sergeant Richard E. Morrissette is a violation of his 6th Amendment right to confrontation. Appellant's Brief at 7. Appellant's argument on this point misapprehends the purpose of the Confrontation Clause. It is well-settled that

> [t]he Confrontation Clause provides that in all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the **witnesses** against him. ... At its most basic level, the Sixth Amendment's Confrontation Clause seeks to ensure that the trial is fair and reliable by preserving an accused's right to cross-examine and confront the **witnesses** against him.

*Commonwealth v. Collins*, 888 A.2d 564, 575 (Pa. 2005) (internal quotation marks and citations omitted; emphasis added).

The record reflects that the Commonwealth called as witnesses Officer Joseph McGhee, as well as Appellant's mother, brother, and sister. Sergeant

Morrissette was not called as a witness against Appellant. As **Collins** explains, the Confrontation Clause requires that an appellant be afforded the opportunity to confront those witnesses called to offer evidence against him. The record is clear that Appellant was permitted to do so herein. However, the Confrontation Clause does not mandate that the Commonwealth call **every** potential witness in a case and we reject Appellant's assertion that failure to present every witness to his alleged crimes somehow renders his verdict constitutionally infirm. **Commonwealth v. Gasiorowski**, 310 A.2d 343, 344 (Pa. Super. 1973) (citations omitted) (holding that "it is not the obligation of the prosecutor in a criminal case to call all the material witnesses to the case, nor even to call the victim").

Appellant next claims that the trial court erred in denying his motion for a new trial where the Commonwealth repeatedly refused to "disclose the written statements of the victim and witnesses that were favorable to [him]" in violation of Pa.R.Crim.P. 573(B) and **Brady v. Maryland**, 373 U.S. 83 (1963).[3] Appellant's Brief at 4. Appellant also claims that the

---

[3] Rule 573 of the Pennsylvania Rules of Criminal Procedure, which was promulgated in response to **Brady**, mandates disclosure by the Commonwealth of the following items.

> (a) Any evidence favorable to the accused that is material either to guilt or to punishment, and is within the possession or control of the attorney for the Commonwealth;

> (b) any written confession or inculpatory statement, or the substance of any oral confession or inculpatory statement, and

Commonwealth withheld dashboard camera footage related to the incident.

*Id.* at 7

> To establish a **Brady** violation, appellant must demonstrate: (1) the prosecution concealed evidence; (2) the evidence was either exculpatory or impeachment evidence favorable to him; and (3) he was prejudiced. To establish prejudice, appellant must demonstrate a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. Impeachment evidence[,] which goes to the credibility of a primary witness against the accused[,] is critical evidence and it is material to the case whether that evidence is merely a promise or an understanding between the prosecution and the witness.

*Commonwealth v. Treiber*, 121 A.3d 435, 460-61 (Pa. 2015) (citations and quotation marks omitted). The burden rests with the appellant to

---

> the identity of the person to whom the confession or inculpatory statement was made that is in the possession or control of the attorney for the Commonwealth;
>
> (c) the defendant's prior criminal record;
>
> (d) the circumstances and results of any identification of the defendant by voice, photograph, or in-person identification;
>
> (e) any results or reports of scientific tests, expert opinions, and written or recorded reports of polygraph examinations or other physical or mental examinations of the defendant that are within the possession or control of the attorney for the Commonwealth;
>
> (f) any tangible objects, including documents, photographs, fingerprints, or other tangible evidence; and
>
> (g) the transcripts and recordings of any electronic surveillance, and the authority by which the said transcripts and recordings were obtained.

Pa.R.Crim.P. 573(B)(1).

"prove, by reference to the record, that evidence was withheld or suppressed by the prosecution." ***Commonwealth v. Porter***, 728 A.2d 890, 898 (Pa. 1999).

In his brief, Appellant concedes that he received two packets of discovery from the Commonwealth, Appellant's Brief at 7, including a written verification from the assistant district attorney that "to the best of the knowledge, information, and belief of the Commonwealth, no dash cam footage exists of [the] incident." Defendant's Exhibit 8. Nonetheless, Appellant maintains that the Commonwealth failed to turn over witness statements and a dash cam video in its control. Such speculation does not satisfy Appellant's burden under ***Brady***. Simply put: Appellant has not convinced us that the Commonwealth withheld any evidence at all, much less evidence material to his guilt or innocence, or that the trial court erred in rejecting his ***Brady*** claim. Accordingly, Appellant is not entitled to relief on this issue.

Appellant next argues that his verdict is "racially prejudiced" because his jury was made up entirely of Caucasian persons and his case involved a Caucasian arresting officer, district attorney and judge. Appellant's Brief at 4, 7. To the extent that Appellant takes issue with the composition of his jury, we are bound by the following principles.

"[T]he accused has no right to demand that specific minority groups or even members of his own race be included in his jury." **Commonwealth v. Sanchez**, 36 A.3d 24, 58 (Pa. 2011).

> To establish a *prima facie* violation of the requirement that a jury array fairly represent the community, [a defendant] must show that: (1) the group allegedly excluded is a distinctive group in the community; (2) the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such people in the community; and (3) this underrepresentation is due to systematic exclusion of the group in the jury selection process. "Systematic" means caused by or inherent in the system by which juries were selected.

**Commonwealth v. Johnson**, 838 A.2d 663, 682 (Pa. 2003). (internal quotation omitted). However, the Rules of Criminal Procedure provide that

> [u]nless opportunity did not exist prior thereto, a challenge to the array shall be made not later than 5 days before the first day of the week the case is listed for trial of criminal cases for which the jurors have been summoned and not thereafter, and shall be in writing, specifying the facts constituting the ground for the challenge.

Pa.R.Crim.P. 625(b)(1).

Appellant fails to indicate where in the record he made his timely challenge to the jury array. Accordingly, this issue is waived. **Commonwealth v. Davis**, 406 A.2d 1087 (Pa. Super. 1979) (holding that, because he failed to adhere to the timeliness requirements provided by the Rules of Criminal Procedure in relation to objecting to a jury array, Davis waived his claim that he was denied a fair trial due to the absence of African Americans on the jury panel.)

- 8 -

To the extent that Appellant's argument can be construed as a claim that the district attorney exhibited racial bias in jury selection under ***Batson v. Kentucky***, 476 U.S. 79 (1986), he holds the burden of making a *prima facie* showing that "the circumstances give rise to an inference that the prosecutor struck one or more prospective jurors on account of race." ***Commonwealth v. Ligons***, 971 A.2d 1125, 1142 (Pa. 2009) (citations omitted). If the *prima facie* showing is made, "the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the juror(s) at issue. [T]he trial court must then make the ultimate determination of whether the defense has carried its burden of proving purposeful discrimination." ***Id.***

Our Supreme Court has held that

> ***Batson's*** burden-shifting formula makes sense when applied to an objection raised sufficiently promptly that the attorney exercising the challenges can reasonably be expected to remember the reasons for the challenges. On the other hand, it would be altogether unreasonable to shift the burden of explanation if the objection is so tardily made that the challenging attorney cannot be reasonably expected to remember. Additionally in cases involving an unpreserved claim of discrimination in jury selection, this Court has generally enforced a requirement of a full and complete record of the asserted violation. We have held that, under such circumstances, the defendant must present a record identifying the race of the venirepersons stricken by the Commonwealth, the race of prospective jurors acceptable to the Commonwealth but stricken by the defense, and the racial composition of the final jury selected.

***Id.*** at 1142-43 (citations and quotation marks omitted).

Instantly, Appellant does not indicate where in the record his ***Batson*** challenge is preserved. As explained above, in the absence of a properly preserved challenge, it is an appellant's burden to present a complete record supporting his claim. Instantly, Appellant's brief argument on this point fails to discuss the *voir dire* process at all, but asks us to presume prejudice based solely on the race of the jurors selected. Appellant's Brief at 7. This allegation, standing alone, is insufficient to establish any actual, purposeful discrimination on the part of the prosecutor during jury selection. "[Our Supreme] Court has repeatedly rejected ***Batson*** claims based on generalized claims of bias or discrimination." ***Ligons***, 971 A.2d at 1145 (citations omitted). Accordingly, we hold that Appellant's claim merits him no relief.

Next, Appellant contends that his sentence is excessive because the trial court erred in applying the DWE. Appellant's Brief at 4. This claim implicates the discretionary aspects of sentencing. ***Commonwealth v. Rhoades***, 8 A.3d 912, 915 (Pa. Super. 2010).

> It is well settled that, with regard to the discretionary aspects of sentencing, there is no automatic right to appeal.
>
>> Before [this Court may] reach the merits of [a challenge to the discretionary aspects of a sentence], we must engage in a four part analysis to determine: (1) whether the appeal is timely; (2) whether Appellant preserved his issue; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a

- 10 -

substantial question that the sentence is appropriate under the sentencing code…. [I]f the appeal satisfies each of these four requirements, we will then proceed to decide the substantive merits of the case.

*Commonwealth v. Disalvo*, 70 A.3d 900, 902 (Pa. Super. 2013) (citations omitted).

While Appellant did timely file a post-sentence motion, nowhere in that document does he mention, or take issue with application of, the DWE. Moreover, in his brief, Appellant fails to satisfy the third and fourth conditions of the above analysis. It is well-settled that "claims relating to the discretionary aspects of a sentence are waived if an appellant does not include a Pa.R.A.P. 2119(f) statement in his brief **and the opposing party objects to the statement's absence**." *Commonwealth v. Brougher*, 978 A.2d 373, 375 (Pa. Super. 2009) (emphasis added). Here, the Commonwealth did not file a brief and, thus, did not object to the absence of a 2119(f) statement. However, even though we decline to find waiver on this basis, Appellant fails to raise a substantial question that the imposed sentence is inappropriate under the sentencing code. Thus, because Appellant has failed to invoke this Court's jurisdiction, we may not review his claim. *See Commonwealth v. Allen*, 24 A.3d 1058, 1064 (Pa. Super. 2011).[4, 5]

---

[4] Nonetheless, even if Appellant's claim were preserved properly, he would not be entitled to relief. To determine whether the DWE should apply, the Sentencing Code provides as follows:

Finally, to the extent that Appellant complains that his counsel was ineffective, we reiterate that such claims are not cognizable on the instant direct appeal. It is well-settled that, absent circumstances not present in the

---

> When the [c]ourt determines that the offender used a deadly weapon during the commission of the current conviction offense, the [c]ourt shall use the DWE/Used Matrix. An offender has used a deadly weapon if any of the following were employed by the offender in a way that threatened or injured another individual; (i) any firearm, (as defined in 42 Pa.C.S. § 9712) whether loaded or unloaded, or (ii) any dangerous weapon (as defined in 18 P.S. § 913) or (iii) any device, implement, or Instrumentality capable of producing death or serious bodily injury.

204 Pa.Code § 303.10(a)(2). A "deadly weapon" is any device designed as a weapon and capable of producing death or serious bodily injury, or any other device or instrumentality which, in the manner in which it is used or intended to be used, is calculated or likely to produce death or serious bodily injury." 18 Pa.C.S. § 2301. Serious bodily injury is defined as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *Id.* The record in this matter reflects that Appellant slashed at his brother with a five-inch long knife while threatening to kill him. Clearly, slashing someone with a knife while making deadly threats is an action calculated or likely to produce serious bodily injury. Contrary to Appellant's protestations, it is immaterial here that his brother was not actually injured. Accordingly, we find no error in the trial court's application of the deadly weapon enhancement in the instant case.

[5] "Under Pennsylvania law, *pro se* defendants are subject to the same rules of procedure as are represented defendants. Although the courts may liberally construe materials filed by a *pro se* litigant, *pro se* status confers no special benefit upon a litigant, and a court cannot be expected to become a litigant's counsel or find more in a written *pro se* submission than is fairly conveyed in the pleading." *Commonwealth v. Blakeney,* 108 A.3d 739, 766 (Pa. 2014).

instant case, claims of ineffective assistance of counsel are to be deferred to PCRA review. ***Commonwealth v. Holmes***, 79 A.3d 562, 576 (Pa. 2013).

For all of the foregoing reasons, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/8/2016