485 A.2d 36
**COMMONWEALTH of Pennsylvania**
v.
**David GARVIN, Appellant.**
Superior Court of Pennsylvania.
Argued Feb. 3, 1984.
Filed Nov. 23, 1984.

David McGlaughlin and George H. Newman, Philadelphia, for appellant.

Eric B. Henson, Deputy District Attorney, and Maxine Stotland, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before SPAETH, President Judge, and WICKERSHAM, BROSKY, CIRILLO, BECK, POPOVICH and HESTER, JJ.

CIRILLO, Judge:

On September 4, 1980 the appellant, David Garvin, and two co-defendants were tried before the Honorable Levan Gordon and a jury on charges arising from an incident which occurred in March of the same year. The appellant was found guilty of rape and simple assault. Post-verdict motions were filed and denied. The appellant was sentenced to a term of imprisonment of not less than 5 nor more than 10 years. An appeal to this Court followed and on October 14, 1983, 321 Pa.Super. 170, 467 A.2d 1307, the judgment of sentence was affirmed. On December 16, 1983, this Court granted the appellant's petition for *en banc* reargument.

The sole issue before the Court *en banc* is "whether use of a harmless error standard is appropriate in the context of appellant's ineffective assistance of counsel claim."

In *Strickland v. Washington,* —— U.S. ——, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court distinguished between the performance component [1] of the analysis of ineffective assistance of counsel claims and the prejudice component of the analysis of such claims.

---

[1] This component was enunciated in the seminal case of *Commonwealth ex rel. Washington v. Maroney,* 427 Pa. 599, 235 A.2d 349 (1967) and its progeny, and reiterated by our Supreme Court in *Commonwealth v. Badger,* 482 Pa. 240, 393 A.2d 642 (1978).

A convicted defendant's claim that counsel's assistance was so defective as to require reversal for a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient.... Second, the defendant must show that the deficient performance prejudiced the defense.... The minor differences in the lower court's precise formulations of the performance standard are insignificant: the different formulations are mere variations of the overarching reasonableness standard.

*Strickland, supra,* at ——, 104 S.Ct. at 2064, 80 L.Ed.2d at 693.

This distinction will clarify the issue which is the subject of review at this time. Our courts have addressed only the performance component of the analysis in reviewing claims of ineffective assistance of counsel; thus confusion has arisen. We need not reject the prior analysis in our clarification today which will incorporate the heretofore intimated but not elucidated prejudice component. The articulation of the prejudice component by our Court is an affirmation of the analysis which our courts have employed sub silentio in deciding ineffective assistance of counsel.[2] The guiding

---

**2.** The following cases are illustrative of the analysis which has been given to such claims employing the two components without articulating them. There is no conflict between the use of the harmless error, prejudice standard, and ineffective assistance of counsel claims.

*Commonwealth v. Upsher,* 497 Pa. 621, 627, 444 A.2d 90, 93 (1982):
Although a prosecutor's language may be improper, a new trial is not required unless the "unavoidable effect would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant, so that they could not weigh the evidence and render a true verdict". *Commonwealth v. Hoss,* 469 Pa. 195, 364 A.2d 1335 (1976). The nature of the questions objected to by appellant's trial counsel were certainly not of the prejudicial nature which would destroy the jury's ability to render a true verdict. Furthermore, since all objections were sustained, every attempt by trial counsel to prevent the prosecutor from pursuing an improper question was successful.
Since appellant's contention that the prosecutor's cross-examination of appellant requires that a new trial be granted is without merit, trial counsel was not ineffective for failing to request a mistrial.

*Commonwealth v. Johnson,* 490 Pa. 312, 317, 416 A.2d 485, 488 (1980):
Appellant's sixth claim of ineffectiveness is that counsel failed to object when the judge, and not the jury as required by statute, imposed the penalty. While it is true that the judge here dismissed the jury before imposing sentence, such error is harmless beyond a reasonable doubt because appellant received the minimum sentence for first degree murder, life imprisonment.

inquiry has until this time focused largely on the principles by which counsel's strategy in a given case can be scrutinized.

In reviewing a claim of ineffectiveness of counsel, with regard to the performance component, a two pronged test has been employed. First our courts have determined whether the claim that counsel failed to assert was of arguable merit. *Commonwealth v. Hubbard*, 472 Pa. 259, 372 A.2d 687 (1977); *see also Commonwealth v. Parker*, 503 Pa. 336, 469 A.2d 582 (1983); *Commonwealth v. Lesko*, 502 Pa. 511, 467 A.2d 307 (1983); *Commonwealth v. Tabron*, 502 Pa. 154, 465 A.2d 637 (1983); *Commonwealth v. Golson*, 310 Pa.Super. 532, 456 A.2d 1063 (1983). Counsel will not be deemed ineffective for failing to assert a baseless claim. *Commonwealth v. Hubbard, supra; see also Commonwealth v. Schreiber*, 319 Pa.Super. 367, 466 A.2d 203 (1983).

If the underlying issue is found to be of arguable merit then our inquiry shifts to the second prong of the test. The court must determine whether the particular course of action chosen had some reasonable basis which

*Commonwealth v. Wade,* 480 Pa. 160, 172, 389 A.2d 560, 566 (1978):
Wade's final argument, advanced through new appellate counsel, alleges a series of omissions by trial counsel which are said to establish that Wade was denied his right to effective representation. As we stated in *Commonwealth v. Hubbard, supra,* before a defendant on direct appeal is entitled to relief under a theory of ineffective assistance of trial counsel, it must appear that the lawyer's act of omission or commission was arguably ineffective representation, and that it is likely that such ineffectiveness was prejudicial to the defendant. (Footnote omitted)

*Commonwealth v. Courts,* 317 Pa.Super. 271, 279, 463 A.2d 1190, 1195 (1983):
The test for ascertaining whether a defendant has been denied effective assistance of counsel is well established. "... [C]ounsel's assistance is deemed constitutionally effective once we are able to conclude that the particular counsel chosen by counsel had *some reasonable basis* designed to effectuate his client's interests." *Commonwealth ex rel. Washington v. Maroney,* 427 Pa. 599, 604, 235 A.2d 349, 352 (1967). Moreover, in order to be entitled to relief under a theory of ineffective assistance of counsel, it must appear that counsel's action or inaction was prejudicial to the defendant. *See Commonwealth v. Hubbard,* 472 Pa. 259, 372 A.2d 687 (1977); *Commonwealth v. Gordon,* 254 Pa.Super. 267, 385 A.2d 1013 (1978).

would effectuate the best interest of the client. *Commonwealth ex rel. Washington v. Maroney, supra; Commonwealth v. Parker, supra; Commonwealth v. Simler,* 320 Pa.Super. 342, 467 A.2d 355 (1983). This determination is not based on a hindsight evaluation of the record. *Commonwealth v. Irwin,* 494 Pa. 277, 431 A.2d 257 (1981); *Commonwealth v. Bailey,* 322 Pa.Super. 249, 469 A.2d 604 (1983).

The Pennsylvania Supreme Court in *Commonwealth v. Badger, supra,* employed both prongs of the *Maroney* test and in the second prong of the performance test, rejected the use of a harmless error/prejudice standard at that stage of the analysis.

> [I]n examining the alternatives, a court may not utilize a harmless error analysis, and the alternatives must be examined only as a means of determining whether the course chosen had some reasonable basis.[3]

482 Pa. at 244, 393 A.2d at 644.

The alternatives not chosen by counsel are evaluated within the context of his trial strategy. If the harmless error standard were used to evaluate counsel's actions, then his effectiveness would be evaluated in terms of the weight of the evidence against the appellant. This would contravene the well established precedent of *Commonwealth ex rel. Washington v. Maroney, supra,* and its progeny. The Court in *Badger* addresses the distinction between the question of the strength of the prosecution's evidence against an appellant and the issue of the reasonable basis of

---

**3.** In defining the term "harmless error," our Supreme Court has stated:

[A]n error may be harmless where the properly admitted evidence of guilt is so overwhelming and the prejudicial effect of the error is so insignificant by comparison that it is clear beyond a reasonable doubt that the error could not have contributed to the verdict.

*Commonwealth v. Story,* 476 Pa. 391, 412, 383 A.2d 155, 164 (1978).

the strategy chosen by counsel to effectuate his client's best interest.

The United States Supreme Court in *Strickland v. Washington, supra,* formulates the explanation for the constitutional right of effective assistance of counsel within the right to a fair trial, which is the basis of the second component of the analysis. A finding of ineffective assistance of counsel can result in the granting of a new trial precisely because the counsel's conduct has deprived the appellant of a fair trial thus rendering the result of the proceeding itself unreliable.

■ The prejudice component supplies the standard to be applied to the determination of the remedy to be afforded the appellant in a criminal case. A finding that appellant is entitled to a new trial cannot be made unless it can be concluded that the alternatives not chosen offered a potential for success substantially greater than the tactics actually utilized, resulting in prejudice to the defendant. *Government of Virgin Islands v. Henry Bradshaw,* 726 F.2d 115 (3rd Cir.1984). *See also, Commonwealth ex rel. Washington v. Maroney, supra; Commonwealth v. Taliaferro,* 309 Pa.Super. 446, 455 A.2d 694 (1983).

■ The appellant contends that trial counsel was ineffective during voir dire in failing to ask for and use the full number of peremptory challenges to which he was entitled under Pa.R.Crim.P. 1126. Appellant has not shown that his counsel's unfamiliarity with a recent change in this rule caused him actual prejudice. Appellant offered no proof that a biased jury was selected. Where appellant makes only a general assertion of ineffectiveness of counsel for failing to exercise the full number of peremptory challenges,

Our Court has held that "[t]he mere fact that no jurors were challenged without more cannot be determinative of one's efficacy as trial counsel." *Commonwealth v. Kittrell,* 285 Pa.Super. 464, 469, 427 A.2d 1380, 1382 (1981).

Counsel cannot be deemed ineffective for not exercising these challenges just for the sake of exercising them. *Commonwealth v. Courts*, 317 Pa.Super. 271, 280, 463 A.2d 1190, 1195 (1983).

Therefore, counsel's action was not shown to have any effect on the outcome of the case, his misunderstanding of the rule was not prejudicial to the appellant, and we find it to be harmless error.

Judgment of sentence affirmed.

SPAETH, President Judge, files a concurring opinion.

BECK and POPOVICH, JJ., concur in the result.

BROSKY, J., files a dissenting opinion.

SPAETH, President Judge, concurring:

The question raised by this appeal is, What rule should a court apply in deciding whether the defendant in a criminal case has been denied the assistance of counsel?

In *Strickland v. Washington*, —— U.S. ——, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the United States Supreme Court answered this question by announcing a two-part rule. First: The defendant must show that counsel failed to conduct the case in a reasonably competent manner. In deciding whether the defendant has made this showing, the Court will be "highly deferential" to counsel, and will "strongly presume[ ]" that counsel "rendered adequate assistance." *Id.* at ——, 104 S.Ct. at 2065–66, 80 L.Ed.2d at 694–95. And second: Even if inadequate assistance appears, the defendant must further show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at ——, 104 S.Ct. at 2068, 80 L.Ed.2d at 698.

The plurality would adopt *Strickland.* I agree with Judge BROSKY that this is precipitous, and that we should await the decision of our Supreme Court. But putting that aside, I am unwilling to follow in *Strickland*'s wake. For the rule *Strickland* announces is inconsistent with settled

principle, and the burden it imposes on the defendant is so heavy that instead of affording, it denies the protection guaranteed by the sixth amendment. By remitting the poor to the representation of incompetent counsel, *Strickland* abandons our proudest aspiration—to achieve equal justice for all. It is an unfortunate decision, which I hope the Court will some day repudiate.

Meanwhile, *Strickland* is of course binding as to the meaning to be given the sixth amendment. But it is of no force as to the meaning to be given article 1, section 9, of the Pennsylvania Constitution, which also guarantees the assistance of counsel. After considering what effect should be given article 1, section 9, I have concluded that under it, the rule in Pennsylvania courts should be that if the defendant shows that counsel did not conduct the case in a reasonably competent manner, relief must be granted, unless the prosecution shows beyond a reasonable doubt that counsel's conduct had no effect on the outcome of the case. While I acknowledge that the authorities are not consistent, I submit that the better reasoned ones support this rule.

Applying this rule to the facts of this case, I conclude that appellant did show that counsel was not reasonably competent, but that the Commonwealth showed beyond a reasonable doubt that counsel's incompetence had no effect on the outcome of the case. I therefore concur in the order affirming the judgment of sentence.

–1–

I have found it impossible to reconcile the Pennsylvania cases on the rule to be applied in deciding whether the defendant in a criminal case has been denied the assistance of counsel. To state such a rule, one must answer two questions: By what standard should counsel's assistance be measured? And if counsel's assistance failed to satisfy that standard, must the defendant prove that the failure had an effect on the outcome of the case? The cases provide no clear or consistent answers to these questions. Many cases measure counsel's assistance by asking whether counsel had some reasonable basis for believing that the

course he chose would assist his client. However, it has proved difficult, if not impossible, to give content to this standard because of the uncertainty regarding the defendant's burden of proof. The question whether counsel had a reasonable basis for the course he chose has tended to be confused with, or telescoped into, the question whether the course counsel chose had an effect on the outcome of the case.

This tendency has resulted in two lines of cases. In one line, the cases seem to hold that if the defendant shows that counsel did not have a reasonable basis for the course he chose, then the defendant has proved that he was denied the assistance of counsel, and relief must be granted. *See, e.g., Commonwealth v. Badger,* 482 Pa. 240, 393 A.2d 642 (1978) (court may not use harmless error analysis and alternatives must be examined only to determine whether course chosen by counsel had some reasonable basis); *Commonwealth ex rel. Washington v. Maroney,* 427 Pa. 599, 235 A.2d 349 (1967) (finding of ineffectiveness cannot be made unless alternatives not chosen offer potential for success substantially greater than tactics used; therefore, if there was no reasonable basis for counsel's decision, his decisions were prejudicial to client); *Commonwealth v. Williams,* 273 Pa.Super. 147, 416 A.2d 1132 (1979) (counsel found ineffective for failing to interview witnesses; Commonwealth's argument rejected that defendant had to show that counsel's conduct prejudiced him). In the other line, the cases either expressly or implicitly apply a prejudice or harmless error analysis. *See, e.g., Commonwealth v. Clemmons,* 505 Pa. 356, 479 A.2d 955 (1984) (to establish ineffectiveness defendant must show counsel's action arguably ineffective and likelihood of prejudice); *Commonwealth v. Vogel,* 501 Pa. 314, 461 A.2d 604 (1983), *cert. denied,* — U.S. —, 104 S.Ct. 1603, 80 L.Ed.2d 133 (1984) (even if counsel's reasons for failure to pursue motion for change of venue were inadequate, final judgment will not be disturbed absent further showing that failure deprived defendant of fair trial); *Commonwealth v. Johnson,* 490

Pa. 312, 416 A.2d 485 (1980) (rejecting claim that counsel was ineffective in failing to object when judge and not jury imposed penalty; since minimum sentence was imposed, any error was harmless); *Commonwealth v. Weathers El*, 485 Pa. 28, 400 A.2d 1295 (1979) (although counsel testified that failure to introduce testimony was an oversight, counsel not deemed ineffective because failure did not prejudice defendant; record discloses that testimony would not have been sufficient to negate specific intent); *Commonwealth v. Green*, 315 Pa.Super. 564, 462 A.2d 736 (1983) (rejecting claim that counsel was ineffective in failing to object to references to defendant's prior criminal activity; court convinced beyond reasonable doubt that references did not contribute to verdict).

Given this uncertain state of the law, I believe that we should reexamine the issues raised by a defendant's claim that he was denied the assistance of counsel—that we should put aside the decided cases, and start afresh.

–2–

The sixth amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defense." In *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), the United States Supreme Court held that this guarantee was violated when an indigent defendant charged with a felony in a federal court was convicted and imprisoned without having had counsel appointed to assist him, unless the defendant had waived the assistance of counsel. However, the sixth amendment guarantee to the assistance of counsel did not extend to the states. The only Federal Constitutional right that a defendant in a state court had was the right to a fair trial under the due process clause of the fourteenth amendment. *Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932). Consequently, an indigent defendant in a state court could not complain of not having had the assistance of counsel unless the absence of counsel resulted in a conviction lacking in fundamental fairness. *Betts v. Brady*, 316 U.S. 455,

62 S.Ct. 1252, 86 L.Ed. 1595 (1942). This inequity was eliminated by the United States Supreme Court in *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), in which the Court held the sixth amendment guarantee to the assistance of counsel applicable to the states through the due process clause of the fourteenth amendment. Under *Gideon*, therefore, an indigent defendant must be provided with counsel in all felony prosecutions, whether in federal or state court. This requirement has been extended to include all misdemeanor prosecutions in which a sentence of imprisonment is actually imposed, *Scott v. Illinois*, 440 U.S. 367, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979); *Argersinger v. Hamlin*, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972).

This steady expansion of the sixth amendment guarantee to the assistance of counsel, first to all courts, and next to almost all criminal prosecutions, is critical to our inquiry in this case. For it illustrates the most persistent and powerful tendency of our modern Constitutional law: the aspiration that everyone, rich or poor, in whatever court, should enjoy the same protections of the law.

–3–

The burden of proving the denial of a constitutional right is on the person asserting the denial. *See United States v. Cronic*, —— U.S. ——, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984); *Commonwealth v. Clemmons, supra.* Accordingly, with the expansion of the sixth amendment, the courts have repeatedly had occasion to consider what showing the defendant must make to prove that his right to the assistance of counsel was in fact denied.

It was early established that the right to the assistance of counsel means the right to the *effective* assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970) ("if the right to counsel guaranteed by the Constitution is to serve its purpose, defendants cannot be left to the mercies of incompetent counsel"); *Powell v. Alabama*, 287 U.S. at 71, 53 S.Ct. at 65 (the duty to appoint counsel to represent a defendant "is not

discharged by an assignment at such a time or under such circumstances as to preclude the giving of effective aid in the preparation and trial of the case"). The question therefore became, What showing must the defendant make to prove that his counsel was ineffective?

For two types of cases the answer to this question is clear:

In the first type the defendant proves that his counsel was ineffective by showing that the government—federal or state—disabled counsel from fully assisting him. *See Geders v. United States*, 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976) (judge prohibited any attorney-client consultation during overnight recess); *Herring v. New York*, 422 U.S. 853, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975) (under authority of statute judge exercised his discretion to refuse to allow summation at bench trial); *Brooks v. Tennessee*, 406 U.S. 605, 92 S.Ct. 1891, 32 L.Ed.2d 358 (1972) (statutory requirement that defendant be first defense witness); *Ferguson v. Georgia*, 365 U.S. 570, 81 S.Ct. 756, 5 L.Ed.2d 783 (1961) (statutory bar on direct examination of defendant). In the second type the defendant proves that his counsel was ineffective by showing that counsel's representation of a co-defendant resulted in an actual conflict of interest that affected counsel's performance. *See Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). In both of these types of cases no further proof is required. In other words, the defendant does not have to prove that the ineffectiveness of his counsel resulted in any prejudice to his case. Instead, prejudice will be presumed. The reason is that in these types of cases prejudice is at once both likely to occur and difficult, if not impossible, to measure. *Strickland v. Washington*, —— U.S. at ——, 104 S.Ct. at 2067, 80 L.Ed.2d at 696. An additional reason is that state interference with the right to counsel and actual conflicts of interests are easy to identify and therefore easy to prevent. *Id.*

Suppose, however, that a defendant asserts that even though there was no state interference with his right to

counsel, and even though counsel was not burdened with an actual conflict of interest, still counsel was ineffective. In such a case, what showing must the defendant make? Cases presenting this question may be divided into three types. The point to note is that the first two of these types are of no assistance in deciding what should be the defendant's burden.

The first type of case may be illustrated by assuming a case in which the defendant shows that the trial was a "farce and mockery of justice," *see Jones v. Huff,* 80 App.D.C. 254, 152 F.2d 14 (D.C.Cir.1945), or that counsel failed to introduce evidence that would have established his innocence, as, for example, a rock-solid alibi, *see United States v. Decoster,* 199 App.D.C. 359, 448 n. 105, 624 F.2d 196, 284 n. 105 (D.C.Cir.), *cert. denied,* 444 U.S. 944, 100 S.Ct. 302, 62 L.Ed.2d 311 (1979). (dissenting opinion by BAZELON, J., joined by WRIGHT, C.J.). In cases of this type there is no question that the defendant is entitled to relief. The question whether the defendant has the burden of proving prejudice need not be decided. The court may assume *arguendo* that the defendant *does* have the burden, for whether he does or not, the court's decision will be the same.

The second type of case may be illustrated by assuming a case in which the prosecution shows beyond a reasonable doubt that however "effective assistance" is defined, counsel's act, or omission, had no effect on the verdict or sentence. In cases of this type there is no question that the defendant is *not* entitled to relief. Again, the question whether the defendant has the burden of proving prejudice need not be decided. The court may assume *arguendo* that the defendant does *not* have the burden, for again, whether he does or not, the court's decision will be the same. *See Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970) (hearing on claim of ineffective assistance of counsel for inadequate efforts to exclude evidence was properly denied where some evidence was properly admitted and any error in admission of other evidence was

harmless); *Commonwealth v. Johnson,* 490 Pa. 312, 416 A.2d 485 (1980) (counsel's failure to object when judge rather than jury imposed penalty was harmless because defendant received minimum sentence anyway); *Commonwealth v. Green,* 315 Pa.Super. 564, 462 A.2d 736 (1983) (rejecting claim that counsel was ineffective for failing to object to references to defendant's prior criminal activity where court was convinced beyond reasonable doubt that references did not affect verdict). *And see Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Commonwealth v. Story,* 476 Pa. 391, 383 A.2d 155 (1978).

In the third type of case the result *may* depend first, upon how "ineffectiveness" is defined, and second, upon who has the burden of proving prejudice or lack of prejudice as a result of counsel's ineffectiveness. It is this type of case that confronted the Court in *Strickland v. Washington, supra,* and that confronts us here.

Many cases have analyzed the two issues of how "ineffectiveness" should be defined and who should have the burden of proving prejudice or lack of prejudice. I find *Strickland's* analysis of both issues, especially the issue of burden of proof, unpersuasive and contrary to settled principle.

–4–

–a–

The definition of "ineffectiveness", or to state it affirmatively, of "the effective assistance of counsel", has been much debated. *See,* for a particularly full discussion and collection of authorities, the several opinions in *United States v. Decoster, supra.* It is evident that "effective" must mean *at least* "reasonably competent." For if counsel could be "effective" even though *"in* competent," the sixth amendment guarantee to "the assistance of counsel" would mean only that the defendant was entitled to *a* lawyer—any lawyer—to act as counsel, whether that lawyer knew anything about the principles of criminal law, the facts of the case, or how to conduct a trial—in other words, whether or

not that lawyer was able to afford the defendant any "assistance." The debate has been, not about this obvious proposition, but about how to give content to the standard, "reasonably competent."

Some regard the standard as too vague to be of any value. For example, Justice MARSHALL, dissenting in *Strickland*, characterizes it as a standard of "debilitating ambiguity". — U.S. at —, 104 S.Ct. at 2075, 80 L.Ed.2d at 706. In his view,

> it is so malleable that, in practice, it will either have no grip at all or will yield excessive variation in the manner in which the Sixth Amendment is intepreted and applied by different courts. To tell lawyers and the lower courts that counsel for a criminal defendant must behave "reasonably" and must act like a "reasonably competent attorney" ... is to tell them almost nothing.
>
> *Id.*

Accordingly, he concludes, it is essential that the courts develop "particularized standards designed to ensure that all defendants receive effective legal assistance." — U.S. at —, 104 S.Ct. at 2076, 80 L.Ed.2d at 707 (collecting and citing to decisions and scholarly comment attempting to develop such standards).

Others, for example Justice BRENNAN, concurring and dissenting in *Strickland*, are of the view that to measure counsel's performance by a set of "particularized standards" will not prove "sufficiently flexible to accommodate the wide variety of situations giving rise to claims of this kind [*i.e.*, of ineffective assistance]." — U.S. at —, 104 S.Ct. at 2073, 80 L.Ed.2d at 703. In this view, a general standard, such as "reasonable competence," can be given effective content by the courts

> continu[ing] to develop governing principles on a case-by-case basis in the common law tradition, as they have in the past.
>
> *Id.*

Of these two views—the particularized standards and the general standard, common law view—the general standard

view has prevailed in the federal Courts of Appeal, although the words chosen to express the standard have varied. *See Cooper v. Fitzharris*, 586 F.2d 1325, 1330 (9th Cir.1978), *cert. denied*, 440 U.S. 974, 99 S.Ct. 1542, 59 L.Ed.2d 793 (1979) ("reasonably competent attorney acting as a diligent conscientious advocate"); *Marzullo v. Maryland*, 561 F.2d 540, 543 (4th Cir.1977) ("range of competence demanded of attorneys in criminal cases"); *United States v. Easter*, 539 F.2d 663, 666 (8th Cir.1976), *cert. denied*, 434 U.S. 844, 98 S.Ct. 145, 54 L.Ed.2d 109 (1977) ("exercise the customary skills and diligence that a reasonably competent attorney would perform under similar circumstances"); *Beasley v. United States*, 491 F.2d 687, 696 (6th Cir.1974) ("counsel reasonably likely to render and rendering reasonably effective assistance"; "counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interests"); *Moore v. United States*, 432 F.2d 730, 736 (3d. Cir.1970) ("exercise of the customary skill and knowledge which normally prevails at the time and place"); *MacKenna v. Ellis*, 280 F.2d 592, 599 (5th Cir.1960), *modified*, 289 F.2d 928 (5th Cir.1961), *cert. denied*, 368 U.S. 877, 82 S.Ct. 121, 7 L.Ed.2d 78 (1961) ("counsel reasonably likely to render *and rendering* reasonably effective assistance"). While Pennsylvania decisions do not expressly debate the choice between particularized standards and a general standard, they are probably best understood as representing the choice of a general standard. *See, e.g., Commonwealth ex rel. Washington v. Maroney*, 427 Pa. at 604, 235 A.2d at 352 ("*some reasonable basis* designed to effectuate his client's interest").

I am not myself persuaded that there is as much difference between the two views as their respective proponents sometimes seem to believe. Consider, for example, the opinions by Judge ROBINSON and Judge BAZELON, in *United States v. Decoster, supra.* Both judges cite the American Bar Association Standards for the Defense Function as pertinent to measuring counsel's performance. 624

F.2d at 250 and n. 44 (ROBINSON, J.), *id.* at 276–77 (BAZELON, J.). Speaking broadly, Judge ROBINSON may be seen as a proponent of a general standard, to be given increasingly precise definition by the courts proceeding on a case-by-case basis, in the common law tradition, and Judge BAZELON as a proponent of particularized standards, to be promulgated in advance, somewhat in the nature of a code of conduct to be borne in mind by defense counsel as they undertake a given case. However, to the extent that the courts, proceeding on a case-by-case basis, adopt and enforce the ABA Standards, Judge ROBINSON's general standard and Judge BAZELON's particularized standards will become identical. Nor is such a development unlikely; in fact, I should expect it to occur. Thus this court, working with the general standard of "some reasonable basis designed to effectuate [the] client's interests," has often made reference to the ABA Standards in evaluating counsel's performance. *See, e.g., Commonwealth v. McCaskill,* 321 Pa.Super. 266, 468 A.2d 472 (1983) (§ 4–4.1 —duty to investigate); *Commonwealth v. McFarland,* 304 Pa.Super. 470, 450 A.2d 1008 (1982) (§ 4–5.2(a)—duty to advise defendant regarding right to testify); *Commonwealth v. Ross,* 289 Pa.Super. 104, 432 A.2d 1073 (1981) (§ 4–8.2—duty to advise defendant regarding right to appeal).

Given such increasing particularization of a general standard, it may not be important, at least not critical, whether in defining "ineffectiveness" a court adopts the particularized standards or the general standard, common law view. On balance, however, the general standard, common law view of reasonable competence seems the better view. The professional competence of counsel on the civil side is measured by this standard, when counsel is sued for malpractice, *see Schenkel v. Monheit,* 266 Pa.Super. 396, 399, 405 A.2d 493, 494 (1979) ("ordinary skill and knowledge"), and the same is true when the competence of persons practicing professions other than law is measured, *see Incollingo v. Ewing,* 444 Pa. 263, 282 A.2d 206 (1971) (physi-

cian or surgeon), *Bloomsburg Mills, Inc. v. Sordini Construction Co., Inc.*, 401 Pa. 358, 164 A.2d 201 (1960) (architect); *O'Neill v. Atlas Automobile Finance Corp.*, 139 Pa.Super. 346, 11 A.2d 782 (1940) (accountant). I find no persuasive reason for measuring the professional competence of counsel on the criminal side differently. To the contrary, it is often useful in developing one part of the law to draw on other parts of the law where there has been experience with a similar problem.

I should therefore hold, not simply because it is consistent with Pennsylvania cases but because it is the better view, that a defendant asserting ineffectiveness of counsel must show that counsel did not perform in a reasonably competent manner.

It is now in order to consider *Strickland*'s analysis of the issue of how "ineffectiveness" should be defined. The short answer is that *probably Strickland* adopts the general standard, common law view. Certainly that is what the Court says it is doing, stating that

> [i]n any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances.... No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant.

—— U.S. at ——, 104 S.Ct. at 2065, 80 L.Ed.2d at 694. And elsewhere in its opinion the Court refers to decisions by the federal Courts of Appeals, and cites its own decision in *McMann v. Richardson, supra,* to the effect that defense counsel must be "reasonably competent." —— U.S. at ——, 104 S.Ct. at 2065, 80 L.Ed.2d at 693. The difficulty is that, having made these apparently clear and straightforward statements, the Court then proceeds to qualify them so drastically that one is left to wonder what they really mean.

Specifically: Immediately after stating that counsel's performance is to be evaluated by a general standard, the Court admonishes the reader that, however, "[j]udicial scrutiny of counsel's performance must be highly deferential." —— U.S. at ——, 104 S.Ct. at 2065, 80 L.Ed.2d at 694. Then the Court adds that

[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

*Id.* at ——, 104 S.Ct. at 2065–66, 80 L.Ed.2d at 694–95 (citation omitted).

And then the Court adds that "the court should recognize that counsel is strongly presumed to have rendered adequate assistance." *Id.* at ——, 104 S.Ct. at 2066, 80 L.Ed.2d at 695. Finally, the Court adds that

[i]n any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Id.*

Justice MARSHALL, dissenting in *Strickland,* states that even if he were otherwise inclined to join the majority opinion, he "could not abide" these "elaborat[ions]" upon the general standard of "reasonable competence," —— U.S. at ——, 104 S.Ct. at 2077, 80 L.Ed.2d at 709, going on to say:

I am not sure what these phrases mean, and I doubt that they will be self-explanatory to lower courts. If they denote nothing more than that a defendant claiming he was denied effective assistance of counsel has the burden of proof, I would agree. *See United States v. Cronic,* [—— U.S. at ——, 104 S.Ct.], at [2046]. But the adjectives "strong" and "heavy" might be read as imposing upon defendants an unusually weighty burden of persuasion. If that is the majority's intent, I must respectfully dis-

sent. The range of acceptable behavior defined by "prevailing professional norms," [citation omitted], seems to me sufficiently broad to allow defense counsel the flexibility they need in responding to novel problems of trial strategy. To afford attorneys more latitude, by "strongly presuming" that their behavior will fall within the zone of reasonableness, is covertly to legitimate convictions and sentences obtained on the basis of incompetent conduct by defense counsel.

—— U.S. at ——, 104 S.Ct. at 2078, 80 L.Ed.2d at 709–10.

I submit that this criticism is unanswerable. When any other professional person—a civil lawyer, *see Schenkel v. Monheit, supra;* doctor, *see Incollingo v. Ewing, supra;* accountant, *see O'Neill v. Atlas Automobile Finance Corp., supra;* or architect, *see Bloomsburg Mills, Inc. v. Sordini Construction Co., Inc., supra;* —is claimed to have performed with something less than "reasonable competence", the courts do not take a "highly deferential" attitude, or engage in any "presumption" at all, much less a "strong" or "heavy" presumption that the lawyer, doctor, accountant, or architect, has behaved reasonably. Why should the courts judge the competence of the criminal defense bar any differently? Why be less willing to find incompetence on the criminal side than on the civil side? If anything, I should suppose it would be just the other way around. The injury suffered by an unjustly imprisoned person because incompetent defense counsel failed him is likely to be much more grievous than the injury suffered by one who has lost a malpractice action because of incompetent counsel. If we really value our liberty and reputation as much as our money, we should judge the competence of criminal defense counsel by a standard at least as exacting as the standard by which we judge other professional behavior.

The majority opinion in *Strickland* says that its "highly deferential" treatment of the criminal defense bar is necessary because

[t]he availability of intrusive post-trial inquiry into attorney performance or of detailed guidelines for its evaluation would encourage the proliferation of ineffectiveness challenges.

—— U.S. at ——, 104 S.Ct. at 2066, 80 L.Ed.2d at 695. This statement, I submit, would be regrettable coming from any court. It is immeasurably regrettable coming from the highest court in our nation. The statement assumes that because there is a "proliferation" of challenges, most of the challenges must be without merit. Why should that be so? Perhaps there is a proliferation of challenges because there is a proliferation of incompetent counsel. Not long ago there was a proliferation of civil rights cases. That was because there was a proliferation of racial discrimination. Besides, even if most of the ineffectiveness challenges are without merit, that is no reason for applying to them a standard less exacting than the standard applied in other cases. Many mechanisms are available for screening out and promptly disposing of meritless cases—civil *and* criminal—among them, the appointment of masters and the initiation of various "fast-track" procedures. A court's first responsibility is to protect our constitutional rights. The fact that there is a proliferation of sixth amendment claims is no basis for deciding these claims with any less care than is exercised in deciding first amendment claims, or any other claim that a constitutional right has been denied.

–b–

It is now in order to consider the second issue involved in what I have described above as the "third type" of ineffectiveness case: If the defendant shows that counsel was "ineffective," then who has what burden of proof? Must the defendant further prove that counsel's ineffectiveness "prejudiced" him (putting aside for the moment what "prejudice" means)? Or does the burden shift to the prosecution to show beyond a reasonable doubt that counsel's ineffectiveness did not affect the outcome of the case? (The "harmless error" rule.) Or should the defendant's showing

582

of ineffectiveness end the matter, in other words, should a new trial be ordered regardless of whether the defendant suffered any prejudice, and therefore without making inquiry concerning prejudice?

Justice MARSHALL, dissenting in *Strickland,* would adopt the last rule. In his view the right to the effective assistance of counsel is "so basic to a fair trial" that its denial "can never be treated as harmless error." —— U.S. at ——, 104 S.Ct. at 2073, 80 L.Ed.2d at 704 (quoting *Chapman v. California,* 386 U.S. at 23 n. 8, 87 S.Ct. at 828 n. 8).

Perhaps the most useful way to examine Justice MARSHALL's position is to examine it in the context of the general question, When is it wise to adopt a *per se* rule? As already noted, in *some* situations it is settled that a showing of denial of the effective assistance of counsel will *per se* result in a new trial, without inquiry concerning prejudice. This will occur when the defendant shows that the state has disabled counsel from fully assisting him, *see, e.g., Geders v. United States, supra,* and when the defendant shows that counsel was burdened with an actual conflict of interest that affected counsel's performance, *see, e.g., Cuyler v. Sullivan, supra.* It does not follow, however, that in *every* situation in which the defendant shows ineffectiveness the showing will *per se* result in a new trial. A *per se* rule is appropriate where the danger to be avoided—state interference with counsel; conflicts of interests—is easy to identify and therefore easy to prevent. *See United States v. Decoster,* 624 F.2d at 201–03 (LEVENTHAL, J.). Where, as is true of the typical ineffectiveness case—the sort of case that confronts us here—the danger is not specific or discrete but identifiable only after an examination of all of the particular circumstances, which will vary widely from case to case, a *per se* rule does not seem the best response. For while its rigidity will result in many reversals, the reversals will not result in the desired improvement in counsels' performance. Counsel who know that they must not represent co-defendants with conflicting interests can easily avoid doing so; counsel who only know

that they will be declared ineffective for failing to conduct the trial with "reasonable competence" will not find conformity so easy.

I therefore conclude that we should not adopt Justice MARSHALL's position. Instead, I believe, we should adopt the harmless error rule, and hold that if the defendant shows that counsel was ineffective—did not perform in a reasonably competent manner—then the burden shifts to the prosecution to show beyond a reasonable doubt that counsel's ineffectiveness did not affect the outcome of the case. This rule, it seems to me, gives appropriate recognition, both to the variety of circumstances that arise in ineffectiveness cases, thereby avoiding the rigidity of a *per se* rule, and to the gravity of the fact that it is a constitutional right that has been denied. Furthermore, and of decisive importance, adoption of the harmless error rule is consistent with the settled principle that where the denial of a constitutional right has been shown, if reversal does not follow *per se*, it will follow unless the prosecution proves beyond a reasonable doubt that there was no prejudice. *See, e.g., Moore v. Illinois,* 434 U.S. 220, 98 S.Ct. 458, 54 L.Ed.2d 424 (1977) (identification of defendant at preliminary hearing at which defendant was unrepresented); *Chapman v. California, supra* (comment on defendant's failure to testify); *Milton v. Wainwright,* 407 U.S. 371, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972) (post-indictment confession elicited by police officer from defendant without assistance of counsel). *And see United States v. Decoster,* 199 App. D.C. at 403–415, 624 F.2d at 250–262 (concurring opinion by ROBINSON, J.). I can see no basis in principle for distinguishing between the procedural consequences attendant upon a showing of denial of one constitutional right and a denial of another constitutional right. Surely the sixth amendment right to assistance of counsel is to be accorded equal dignity with any other constitutional right. And yet, that is precisely what *Strickland* does not do. It holds that it is not enough for the defendant to show that counsel was ineffective; he must further show that counsel's ineffective-

ness was "prejudicial to the defense." —— U.S. at ——, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. The Court thereby imposes on one who pleads denial of the sixth amendment right to the assistance of counsel a heavier burden than is imposed on one who pleads denial of any other constitutional right.

In addition, the Court does not consistently or clearly explain what it means by "prejudicial to the defense". At first, after saying that "the defendant [must] affirmatively prove prejudice," —— U.S. at ——, 104 S.Ct. at 2067, 80 L.Ed.2d at 697, it says that

[e]ven if a defendant shows that particular errors of counsel were unreasonable . . . , the defendant must show that they actually had an adverse effect on the defense. *Id.*

However, after saying this, the Court specifically rejects the suggestion—which might have been taken as its meaning—that it is sufficient to show that "[counsel's] errors 'impaired the presentation of the defense.'" *Id.* "That standard," says the Court, "provides no workable principle", for "any error . . . 'impairs' the presentation of the defense." *Id.* What is needed, the Court suggests, is "[a] way of deciding what impairments are sufficiently serious to warrant setting aside the outcome of the proceeding." *Id.* This seems to imply that the defendant's burden is to prove, not counsel's ineffectiveness, but his own innocence. However, the Court at once rejects this implication, saying that "[o]n the other hand, we believe that a defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case." *Id.* Finally, the Court concludes its discussion of the defendant's burden with this statement of "the appropriate test for prejudice":

The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

—— U.S. at ——, 104 S.Ct. at 2068, 80 L.Ed.2d at 698.

To borrow Justice MARSHALL's words, which I quoted above in another context: "I am not sure what these phrases mean, and I doubt that they will be self-explanatory to lower courts"—or, I may add, to defense counsel either. I *am* sure, however, that the burden imposed on the defendant, whatever its exact dimensions, is so heavy that only in the rare case will the defendant be able to prove that he was denied the effective assistance of counsel. He will be able to do it, I assume, if he proves that counsel failed to introduce evidence of a rock-solid alibi. *See* the actual case stated by Judge BAZELON, in *United States v. Decoster*, 624 F.2d at 284 n. 105. And perhaps he will do it if he proves that counsel failed to move to suppress his confession, when there was no question that the confession had been unconstitutionally obtained, and when the only evidence that the defendant had committed the crime was the confession. It is difficult to imagine what other sorts of cases might satisfy the Court that "but for counsel's unprofessional errors, the result of the proceeding would have been different." —— U.S. at ——, 104 S.Ct. at 2068, 80 L.Ed.2d at 698.

Commenting on the Court's test for prejudice, Justice MARSHALL said this:

First, it is often very difficult to tell whether a defendant convicted after a trial in which he was ineffectively represented would have fared better if his lawyer had been competent. Seemingly impregnable cases can sometimes be dismantled by a good defense counsel. On the basis of a cold record, it may be impossible for a reviewing court confidently to ascertain how the government's evidence and arguments would have stood up against rebuttal and cross-examination by a shrewd, well prepared lawyer. The difficulties of estimating prejudice after the fact are exacerbated by the possibility that evidence of injury to the defendant may be missing from the record precisely because of the incompetence of defense counsel. In view of all of these impediments to a fair evaluation of the probability that the outcome of a

trial was affected by ineffectiveness of counsel, it seems to me senseless to impose on a defendant whose lawyer has been shown to have been incompetent the burden of demonstrating prejudice.

—— U.S. at ——, 104 S.Ct. at 2076, 80 L.Ed.2d at 708 (footnote omitted) (MARSHALL, J., dissenting).

I subscribe to these comments. By the Court's test, the only defendant who will be able to prove that he was denied his sixth amendment right to the assistance of counsel will be the defendant who can prove that he would have been acquitted. It is all very well for the Court to say to counsel at an ineffectiveness hearing, "You don't have to prove that in *fact* your client would have been acquitted—that the result of the proceeding would have been different—only a reasonable *probability* that he would have been." In the real world, counsel will have to prove the fact.

–5–

In beginning this opinion, I characterized *Strickland* as an unfortunate decision, which I hoped the Court would some day repudiate. Harsh words, I admit, and yet, I think, necessary.

The Court's reasoning in *Strickland*, to state it in the form of a syllogism, is as follows: A defendant convicted of a crime is not entitled to plead denial of his sixth amendment guarantee to the assistance of counsel unless he proves prejudice. If he should have been convicted anyway, however, he cannot prove prejudice, for his conviction did not prejudice him but was what he deserved. Therefore, a defendant is only entitled to plead the sixth amendment guarantee if he can prove that instead of being convicted he would have been acquitted ("the result of the proceeding would have been different").

This reasoning is fundamentally flawed. The sixth amendment guarantee does *not* extend only to someone who should have been acquitted. It therefore does *not* require proof of prejudice. It says nothing about "guilt" or "prejudice". What it does refer to, and guarantees, is

"assistance of counsel." It guarantees this assistance to innocent *and* guilty alike. Its concern is not with the *outcome* of the case—conviction or acquittal—but the *process* by which that outcome is reached. And the process it intends is the *adversarial* process. That is why, when inquiring whether the defendant in a criminal case received the assistance of counsel guaranteed by the sixth amendment, a court should *not* inquire, as *Strickland* does, into the defendant's guilt—whether he was prejudiced by his conviction—but instead should inquire, and should *only* inquire, into whether the defendant's counsel was the sort of counsel the proper functioning of the adversarial process requires. If the defendant shows that he did not have that sort of counsel, he will have shown that he was denied the process guaranteed him by the sixth amendment. And the defendant will make this showing if he shows that his counsel was incompetent, for the essence of the adversarial process—its basic premise—is that both the prosecution and the defense must be represented by competent counsel. It is therefore only *after* the court has determined that the defendant's counsel was not competent that the court should inquire into prejudice. Then, since the defendant will have shown that his constitutional right to counsel was denied, the inquiry should be, as in other constitutional cases, whether the denial was harmless beyond a reasonable doubt.

Nothing in what I have just said is novel. To the contrary, settled principle establishes that the issue of effective assistance and prejudice must not be confused, as *Strickland* confuses them, but must be kept distinct, and that the concern of the sixth amendment is only with effective assistance, and not with prejudice. *See* Note, A New Focus on Prejudice in Ineffective Assistance of Counsel Cases: The Assertion of Rights Standard, 21 American Criminal Law Review 29 (1983) (sixth amendment guarantee to effective assistance of counsel requires that counsel adequately assert all rights of defendant; to establish ineffectiveness, defendant must show that counsel acted in a way that

prejudiced the assertion of one of his rights, including a constitutional or statutory right, or a right created by jurisdictional practice or procedural rules; once defendant establishes ineffectiveness, burden should shift to state to prove error was harmless beyond reasonable doubt); Note, A Functional Analysis of the Effective Assistance of Counsel, 80 Columbia Law Review 1053 (1980) (sixth amendment right to effective assistance of counsel protects different interests at different stages of prosecution; advocate protects defendant's rights to procedural fairness and advantageous outcome, advisor ensures that client has relevant information to make decisions that he must make himself, and negotiator serves as intermediary to temper the severity of an otherwise appropriate result; once defendant shows counsel's performance risked substantial prejudice to any of these interests, burden should shift to prosecution to show harmless beyond reasonable doubt); *United States v. Cronic,* —— U.S. at ——, 104 S.Ct. 2039, 80 L.Ed.2d at 666 ("The right to the effective assistance of counsel is thus the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing."); *United States v. Morrison,* 449 U.S. 361, 364, 101 S.Ct. 665, 667, 66 L.Ed.2d 564 (1981) (The sixth amendment right to the assistance of counsel, "fundamental to our system of justice, is meant to assure fairness in adversary criminal process."); *Cuyler v. Sullivan,* 446 U.S. 335, 343, 100 S.Ct. 1708, 1715, 64 L.Ed.2d 333 (1980) ("Unless a defendant charged with a serious offense has counsel able to invoke the procedural and substantive safeguards that distinguish our system of justice, a serious risk of injustice infects the trial itself."); *Herring v. New York,* 422 U.S. 853, 862, 95 S.Ct. 2550, 2555, 45 L.Ed.2d 593 (1975) ("The very premise of our adversarial system of justice is that partisan advocacy on both sides of a case will best promote the ultimate objective that the guilty be convicted and the innocent go free."); *Anders v. California,* 386 U.S. 738, 744, 87 S.Ct. 1396, 1400, 18 L.Ed.2d 493 (1967) ("The constitutional requirement of substantial equality and fair process can only be attained where counsel acts in the role of an active

advocate in behalf of his client. . . ."); *Gideon v. Wainwright,* 372 U.S. 335, 344, 83 S.Ct. 792, 796, 9 L.Ed.2d 799 (1963) ("[I]n our adversary system of criminal justice, any person haled into court, who is too poor to hire a lawyer, cannot be assured a fair trial unless counsel is provided for him."). *See also* ABA Standards for the Defense Function § 4–1.1 Commentary ("The adversary system requires defense counsel's presence and zealous professional advocacy just as it requires the presence and zealous advocacy of the prosecutor and the constant neutrality of the judge.").

It is not, however, only *Strickland*'s fallacious logic that is of concern. Of greater concern are the consequences of that logic.

Cases decided on fallacious reasoning generally produce bad results, and eventually are repudiated. *See,* for some spectacular examples, *Plessy v. Ferguson,* 163 U.S. 537, 16 S.Ct. 1138, 41 L.Ed. 256 (1896) (racially segregated schools can be equal), *overruled* by *Brown v. Board of Education of Topeka,* 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954); *Adkins v. Children's Hospital,* 261 U.S. 525, 43 S.Ct. 394, 67 L.Ed. 785 (1923) (legislation establishing minimum wages for women and children is arbitrary interference with freedom of contract), *overruled* by *West Coast Hotel Co. v. Parrish,* 300 U.S. 379, 57 S.Ct. 578, 81 L.Ed. 703 (1937); *Colegrove v. Green,* 328 U.S. 549, 66 S.Ct. 1198, 90 L.Ed. 1432 (1946) (whether boundaries of election districts properly drawn presents "political question") (plurality opinion), *distinguished in Baker v. Carr,* 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962) (equal protection challenge); *Betts v. Brady,* 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595 (1941) (sixth amendment inapplicable to the states), *overruled* by *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 733 (1963). Whether *Strickland* will eventually be repudiated I do not, of course, know. But I am sure it will produce bad results.

For those who countenance incompetence encourage it. And surely *Strickland* encourages incompetence. By its rule, the worst bumbler will have little fear of ever being

found ineffective. The result, I suggest, will be a steady decline in the quality of representation afforded those accused of crime. The burden of that decline will fall upon the poor, for most of those accused of crime are poor. I deeply regret this prospect. In guaranteeing the assistance of counsel, the sixth amendment embodies our proudest aspiration—the achievement of equal justice. *Strickland,* by remitting the poor to representation by incompetent counsel, abandons that aspiration.

Nor does this exhaust the concern that one must have with *Strickland.* Suppose the fears I have just expressed are unjustified. Assume that a few years from now a study were to show that *Strickland* had not done what I anticipate it will do—depress the quality of representation provided the poor. That would not validate *Strickland*'s reasoning.

At the bottom of *Strickland,* as at the bottom of this case, lies the ancient ethical dilemma of ends and means. Our Constitution is founded on the premise that the means are what count—that if the end of social justice is ever to be achieved, it will only be through certain means, which the Constitution identifies, and which the courts are committed to uphold. One of those means is elected representatives; another is free speech; another is the provision of competent counsel. Of *course* someone who has committed a crime should be convicted. But the end of conviction is only to be achieved through the means of a trial at which the accused had the assistance of competent counsel. If insisting upon that means results in some guilty persons not being convicted, so be it. *Strickland* inverts the Constitutional equation. It places the end before the means. Given that the end of conviction has been achieved, the Court will not inquire into whether the means of achieving it included a trial at which the accused had the assistance of competent counsel—except in the rare case in which the convicted person can prove "a reasonable probability" that he would have been acquitted.

It is *Strickland*'s inversion of ends and means, even more than its effect on the poor, that troubles me, and makes me say that I will not follow in its wake. If in our preoccupation with one end—achieving convictions—we are willing to diminish one constitutional protection—the right to counsel, then in our preoccupation with some other end we may be willing to diminish some other constitutional protection. Other societies have followed that path. It ends in tyranny.

–6–

*Strickland* is of course binding as to the effect to be given the sixth amendment to the United States Constitution. But, except as it is inherently persuasive, it is of no force as to the effect to be given the Pennsylvania Constitution, specifically, to article 1, section 9, which also guarantees the effective assistance of counsel: "In all criminal prosecutions, the accused hath a right to be heard by himself and his counsel...." Pa. Const., art. 1, sec. 9. *And see Commonwealth v. Sell,* 504 Pa. 46, 49–50, 470 A.2d 457, 459 (1983) ("[T]he decisions of the Court are not, and should not be, dispositive of questions regarding rights guaranteed by counterpart provisions of state law. Accordingly, such decisions are not mechanically applicable to state law issues, and state court judges and the members of the bar seriously err if they so treat them. Rather, state court judges, and also practitioners, do well to scrutinize constitutional decisions by federal courts, for only if they are found to be logically persuasive and well-reasoned, paying due regard to precedent and policies underlying specific constitutional guarantees, may they properly claim persuasive weight as guideposts when interpreting counterpart state guarantees.", quoting Brennan, State Constitutions and the Protection of Individual Rights, 90 Harv.L. Rev. 489, 502 (1977)).

Our Supreme Court has often interpreted the Pennsylvania Constitution to ensure greater protection to the rights of the defendant in a criminal case than that provided by the Federal Constitution. *See Commonwealth v. Sell, su-*

*pra,* (automatic standing to challenge legality of search when charged with possessory offense); *Commonwealth v. Bussey,* 486 Pa. 221, 404 A.2d 1309 (1979) (*Miranda* rights must be explicitly waived) (plurality opinion); *Commonwealth v. DeJohn,* 486 Pa. 32, 403 A.2d 1283 (1979), *cert. denied,* 444 U.S. 1032, 100 S.Ct. 704, 62 L.Ed.2d 668 (1980) (customer has legitimate expectation of privacy in bank records and therefore can challenge legality of seizure); *Commonwealth v. Triplett,* 462 Pa. 244, 341 A.2d 62 (1975) (statements ruled inadmissible on motion to suppress may not be used to impeach defendant who testifies at trial); *Commonwealth v. Richman,* 458 Pa. 167, 320 A.2d 351 (1974) (defendant entitled to counsel at post-arrest, pre-indictment lineup); *Commonwealth v. Mills,* 447 Pa. 163, 286 A.2d 638 (1971) (second prosecution and punishment for same offense not permitted in Pennsylvania unless interests of Commonwealth and jurisdiction that initially prosecuted and punished defendant are substantially different). I believe that we should interpret article 1, section 9, of the Pennsylvania Constitution so that once the defendant in a criminal case shows that his counsel was not reasonably competent, he has established a denial of his right to the effective assistance of counsel, and the burden then shifts to the Commonwealth to prove beyond a reasonable doubt that counsel's incompetence was harmless because it had no effect on the outcome of the case.

Applying this rule here I conclude that appellant met his burden of showing that his counsel was not reasonably competent and, therefore, that he was denied the effective assistance of counsel. Appellant showed the following: At the time voir dire was conducted, appellant's counsel did not know that Pa.R.Crim.P. 1126 had been amended so that appellant was entitled to a minimum of three and a maximum of seven peremptory challenges. N.T. May 6, 1981, 6–8. Counsel believed that appellant and his two co-defendants were together entitled to a total of seven peremptory challenges. *Id.* Had she known of the amendment to the rule, she would have exercised the minimum of three and

requested the maximum of seven peremptory challenges because she was not satisfied with the jury chosen. *Id.* Finally, the record shows that counsel for the three co-defendants did in fact exercise seven peremptory challenges, the maximum to which they thought the defendants were entitled.

The least that can be expected of competent counsel is to know the applicable rules of procedure. *See* ABA Standards for the Defense Function § 4–7.2(a) (2d Ed.1980) ("the lawyer should prepare himself or herself prior to trial to discharge effectively his or her function in the selection of the jury, including . . . the exercise of both challenges for cause and peremptory challenges."). I recognize that a defendant must allege and prove his claim with some specificity. The courts are not required to pursue vague and unsupported allegations of ineffective assistance. *See Commonwealth v. Pettus*, 492 Pa. 558, 424 A.2d 1332 (1981) (boilerplate allegations of ineffective assistance are insufficient to warrant evidentiary hearing; counsel must set forth an offer to prove at an appropriate hearing sufficient facts to support a conclusion that trial counsel may in fact have been ineffective). Although appellant's proof might have been more specific, for example, he might have attempted to prove who counsel would have challenged had she known the rule, I believe that his proof was sufficiently specific to establish counsel's ineffectiveness. For he proved, not only that counsel did not know the rule, but that she would have acted differently had she known the rule.

I further conclude, however, that the Commonwealth met its burden of proving beyond a reasonable doubt that counsel's ineffectiveness was harmless. Although a defendant is entitled to eliminate specific jurors by peremptory challenge, he is not entitled to a specific jury. He is entitled to a fair jury, and the Commonwealth has shown that appellant received a fair jury. The jurors said on voir dire, and they took an oath, that they would be fair. Nothing in the record suggests any reason to believe that they did not keep

their oath. To the contrary, their verdict was amply supported by the evidence.

I therefore concur in the order affirming the judgment of sentence.

BROSKY, Judge, dissenting:

I dissent.

First, I find it a dubious undertaking for this Court to rewrite definitive Supreme Court enunciated standards. See note 2 of the majority opinion quoting *Commonwealth ex rel. Washington v. Maroney* and paraphrasing *Commonwealth v. Hubbard.*

The fact that the United States Supreme Court in *Strickland v. Washington,* —— U.S. ——, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), has declared a "harmless error" standard applicable to the Sixth Amendment right to counsel is, for this Court, a *non-sequitur.* This is because the Courts of this Commonwealth are free to impose a higher level of protection of an individual's civil liberties than is mandated by the Federal Constitution. *Commonwealth v. Walsh,* 314 Pa.Super. 65, 460 A.2d 767 (1983). *Ker v. California,* 374 U.S. 23 at 34, 83 S.Ct. 1623 at 1630, 10 L.Ed.2d 726 at 738 (1963). See Pa. Const. Art. 1 § 9. Until, and if, the Supreme Court of this Commonwealth reshapes the declared standard we continue, I believe, to be governed by it. I suggest that we forget our subordinate role to our Commonwealth's high court when we follow the lead of the U.S. Supreme Court in areas where Pennsylvania's Supreme Court is not obliged to follow.

Second, I find the majority's *"sub silentio"* argument unconvincing. If, indeed, the Pennsylvania Supreme Court advocates a harmless error standard, let it do so openly and plainly. I would also note that it has had the opportunity to do so in a number of cases and has not explicitly done so.[1] I fear that legal predictability rests on too fragile a footing when we read into Pennsylvania Supreme Court cases stan-

1. Of course, this case itself, were allocatur granted, would provide a forum for such a change.

dards which have not been forthrightly announced and which, further, go beyond the clearly stated standards.

Third, while not expressing a firm conclusion on this matter (for I do not think that we are in a position to do so), I note that Justice Marshall's dissent in *Strickland* raises some salient points which are cause for deep concern. Most significantly in this regard is the following:

> First, it is often very difficult to tell whether a defendant convicted after a trial in which he was ineffectively represented would have fared better if his lawyer had been competent. Seemingly impregnable cases can sometimes be dismantled by good defense counsel.

*Strickland v. Washington, supra* —— U.S. at ——, 104 S.Ct. at 2076 (Marshall, J., dissenting).

I would reverse.[2]

---

**2.** I note that the majority opinion did not treat appellant's other issues dealing with excessiveness of sentence, a *Riggins,* 474 Pa. 115, 377 A.2d 140 (1977) violation and a merger question.